IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 13-01017 JMS |
| | ) CR. NO. 13-01018 JMS |
| Plaintiff, | ) |
| | ) ORDER GRANTING IN PART |
| vs. | ) MOTIONS IN LIMINE REGARDING |
| | ) MARITAL PRIVILEGE |
| DENNIS RAYMOND ALEXIO, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### ORDER GRANTING IN PART MOTIONS IN LIMINE REGARDING MARITAL PRIVILEGE

### I. INTRODUCTION

The United States of America (the "government") has filed two "Motions in Limine Regarding Marital Privilege" in these related cases. *See* Doc. No. 99 in *United States v. Alexio*, Cr. No. 13-01017 JMS, *and* Doc. No. 89 in *United States v. Alexio*, Cr. No. 13-01018 JMS. This Order rules on both Motions, which concern (1) certain communications between Defendant Dennis Alexio ("Alexio") and his spouse, Anitalei Alexio, and/or (2) certain anticipated testimony of Anitalei Alexio. (Anitalei Alexio is a co-Defendant in Cr. No. 13-01018, and has pleaded guilty to a conspiracy count charged in Count One of the Indictment. *See* Doc. No. 83 (Cr. No. 13-01018 JMS)). Based on the following,

the Motions are GRANTED in part.  Because the marital privilege does not apply outside the courtroom and does not prevent pretrial investigation, the government may proceed to interview Anitalei Alexio as described in the Motions.  In other respects, the Motions are premature.  Prior to trial, if necessary, the government may file new Motions in Limine addressing marital privilege issues regarding the specific proposed trial testimony of Anitalei Alexio.

## II.  BACKGROUND

The government filed its Motions in Limine Regarding Marital Privilege on January 8, and January 9, 2015.  Doc. No. 89 (Cr. 13-01018 JMS); Doc. No. 99 (Cr. No. 13-01017 JMS).  Alexio (through his counsel, who has since withdrawn) filed a Response on January 21, 2015 to the Motion in Cr. No. 13-01017 JMS stating:

> [s]o long as [Anitalei] Alexio voluntarily agrees to testify against her husband at trial, the 'testimonial privilege' would not apply.  Furthermore, the subject matter of the proffered testimony (voice identification, written communications to third parties and ownership of items) do not appear to constitute private 'marital communications' between Mr. and Mrs. Alexio.

Doc. No. 104 (Cr. No. 13-01017 JMS) at 3-4.  Essentially, then, Alexio did not object to the Motion filed in Cr. No. 13-01017 JMS.  Alexio did not, however, file a Response to the corresponding Motion filed in Cr. No. 13-01018 JMS.

Meanwhile, proceedings were delayed for various reasons, including a withdrawal of counsel and competency matters.

On September 16, 2015, the court issued a minute order informing the parties of caselaw stating that no privilege "prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited." *See* Doc. No. 168 (Cr. No. 13-01017 JMS); Doc. No. 158 (Cr. No. 13-01018 JMS) (quoting *Trammel v. United States*, 445 U.S. 40, 52 n.12 (1980)).

At a September 17, 2015 hearing, Alexio (now proceeding *pro se*, with standby counsel) indicated he wanted to review the Motions in Limine, his former counsel's January 21, 2015 Response, as well as the court's September 16, 2015 minute order, so as to determine whether he wanted to file written Responses and/or Oppositions to the Motions in Limine. The court allowed him until September 28, 2015 to file a written Response/Opposition, with a corresponding Reply by the government due by October 2, 2015. *See* Doc. No. 169 (Cr. 13-01017 JMS); Doc. No. 159 (Cr. No. 13-01018 JMS). Alexio, however, did not file a Response/Opposition to the court's September 16, 2015 minute order or to the Motions in Limine.

Subsequently, at an October 20, 2015 status conference, Alexio was given an opportunity to respond to the motions, and he raised a general objection. Accordingly, it is now appropriate for the court to address the Motions.

### III. DISCUSSION

A.   **Marital Privilege Legal Framework**

In federal matters, the marital privilege is governed by Federal Rule of Evidence 501, which provides that "[t]he common law -- as interpreted by the United States courts in the light of reason and experience -- governs a claim of privilege[.]"  The common law recognizes two separate privileges arising out of the marital relationship: (1) the anti-marital facts privilege, and (2) the marital communications privilege.  *United States v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990).

The anti-marital facts privilege permits a witness to refuse to testify against his or her spouse.  *Trammel*, 445 U.S. at 53.  The witness-spouse alone holds the privilege and may choose to waive it.  *Id.*; *see also United States v. Vo*, 413 F.3d 1010, 1016 (9th Cir. 2005).

The marital communications privilege "bars testimony concerning statements privately communicated between spouses."  *Marashi*, 913 F.2d at 729; *see also United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004).  "The

4

non-testifying defendant-spouse may invoke the privilege, even after dissolution of the marriage." *Marashi*, 913 F.2d at 729 (citations omitted). The privilege is limited to: (1) acts or words intended to be communications; (2) communications made during a valid marriage; and (3) marital communications that are confidential. *Id*. Further, the privilege does not protect communications "made in furtherance of joint criminal activity." *Id.* at 731.

The marital privileges are evidentiary principles without "constitutional underpinnings," *United States v. Lefkowitz*, 618 F.2d 1313, 1319 (9th Cir. 1980). Courts have consistently held that the government may use confidential marital communications to investigate crimes, particularly when one spouse has volunteered the information. *See, e.g.*, *United States v. Harper*, 450 F.2d 1032, 1042 (5th Cir. 1971) (concluding "that the Government did not violate the privilege for confidential marital communications when it used [spouse's] statement as a basis for its investigation of [defendant's] illegal activities and did not attempt to introduce any such statements into evidence at . . . trial."); *United States v. Carlson*, 946 F. Supp. 2d 1115, 1129 (D. Or. 2013) ("Because the marital privileges are not grounded in the Constitution, federal and state courts have refused to suppress evidence 'obtained as a result of one spouse's disclosure of confidential marital communications to the police.'") (citations omitted).

### B.      Application of Principles

####  1.      *The Anti-Marital Facts Privilege Is Not Implicated By Either Motion*

Here, Anatalei Alexio has agreed to testify against Alexio, thereby waiving the privilege.  Thus, the anti-marital facts privilege is not implicated by either of the government's Motions.  *See Vo*, 413 F.3d at 1016 (marital facts privilege not implicated because spouse agreed to testify against defendant-husband).  "[T]he witness-spouse alone has a privilege to refuse to testify adversely." *Trammel*, 445 U.S. at 53.

####  2.      *The Marital Communications Privilege Is Not Implicated By Anitalei Alexio's Observations*

In Cr. No. 13-01017 JMS, the government seeks to elicit testimony from Anitalei Alexio for four purposes: (1) to identify Alexio's voice on certain recorded telephone conversations with a third party; (2) to identify Alexio's signature on several documents; (3) to testify that certain computer files found on the Alexios' home computer did not originate from Anitalei Alexio or their children; and (4) to testify that certain blank paper seized from the Alexios' home belonged to Alexio.  Doc. No. 99-1 (Cr. No. 13-01017 JMS), Mem. at 4-5 (referring to Doc. No. 100-1, Anitalei Alexio Decl.).  Because the marital communications privilege "generally, extends only to utterances," *United States v.*

6

*Parker*, 834 F.2d 408, 411 (4th Cir. 1987) (citing *Pereira v. United States*, 347 U.S. 1, 6 (1954)), and because these requests do not relate to any verbal communications between the Alexios, the marital communications privilege is not implicated as to this testimony.

      **3.**    *The Marital Communications Privilege Is Not Implicated By Pretrial Questioning of Anitalei Alexio*

In Cr. No. 13-01017 JMS, among other matters, the government seeks to have pre-trial discussions with Anitalei Alexio about certain communications she had with Alexio, as set forth in her Declaration of January 9, 2015. For example, the government seeks to question her regarding: (1) Alexio's use of the alias "Israel," (*see* Doc. No. 100-1, Anitalei Alexio Decl. ¶ 6); (2) whether Alexio earned income from 2010-11, (*id*. ¶ 7); (3) Fayez Rumi, (*id*. ¶ 8); and (4) a check from Hawaiian Islands Stamp and Coin payable to Lei Alexio, (*id*. ¶ 9).

Similarly, in Cr. No. 13-01018 JMS, the government seeks to question Anitalei Alexio about certain communications surrounding the filing of her 2007 and 2008 tax returns, as well as subsequent attempts to hide proceeds from the tax returns. Doc. No. 89-1 (Cr. No. 13-01018 JMS), Mem. at 8-12.

The federal testimonial privileges encompassed within Rule 501 are "not implicated by an improper disclosure made outside of federal court

proceedings." *United States v. Chase*, 340 F.3d 978, 985 (9th Cir. 2003). As *Trammel* noted, no privilege "prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited." 445 U.S. at 52 n.12. *See also United States v. Burton*, 631 F.2d 280, 281 (4th Cir. 1980) (finding the marital privilege does not prevent wife from supplying history of communications with husband for incorporation into presentence report); *United States v. Chapman*, 866 F.2d 1326, 1333 (11th Cir. 1989) ("Accordingly, today we adopt the view held by the Fifth and other circuits that extrajudicial statements are not excludable on the basis of the spousal privilege.").

Because the marital communications privilege does not limit the government's ability to gather evidence outside of the courtroom and prior to trial, it does not bar the government from asking Anitalei Alexio further questions regarding Alexio. (Any evidence discovered subsequent to the government's discussion with Alexio, however, might still be subject to relevant evidentiary limitations).

## IV. CONCLUSION

Accordingly, the court GRANTS IN PART the Motions in Limine (Doc. No. 99 in *United States v. Alexio*, Cr. No. 13-01017 JMS, *and* Doc. No. 89


in *United States v. Alexio*, Cr. No. 13-01018 JMS).  The government may proceed with its proposed questioning of Anitalei Alexio.  In other respects, to the extent the Motions seek to admit certain topics for trial testimony, the Motions are premature.  Prior to trial, if necessary, the government may file new Motions in Limine addressing marital privilege issues regarding the specific proposed trial testimony of Anitalei Alexio.

       IT IS SO ORDERED.

       DATED:  October 21, 2015.



    /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Alexio*, Cr. Nos. 13-01017 JMS & 13-01018 JMS, Order Granting in Part Motions in Limine Regarding Marital Privilege