IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-01017 JMS-BMK |
| | ) | CR. NO. 13-01018 JMS-BMK |
| Plaintiff, | ) | |
| | ) | ORDER EXPLAINING COURT'S |
| vs. | ) | TERMINATION OF DEFENDANT'S |
| | ) | SELF-REPRESENTATION |
| DENNIS RAYMOND ALEXIO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER EXPLAINING COURT'S TERMINATION OF DEFENDANT'S SELF-REPRESENTATION

## I. INTRODUCTION

Dennis Alexio ("Defendant") is a defendant in two criminal cases in this court, *United States v. Alexio*, Cr. No. 13-01017 JMS-BMK (the "Fictitious Instruments Case") and *United States v. Alexio*, Cr. No. 13-01018 JMS-BMK (the "Tax Case"). Defendant chose to represent himself in both cases, and the court permitted him to exercise his Constitutional right of self-representation (with court-appointed standby counsel) after conducting proceedings in 2015 under *Faretta v. California*, 422 U.S. 806, 835 (1975) (requiring defendant to be "made aware of the dangers and disadvantages of self-representation" to assure the right to counsel is "knowingly and intelligently" waived), and under *Indiana v.*

*Edwards*, 554 U.S. 164, 177-78 (2008) (distinguishing between a defendant's competency to stand trial and competency to perform the more arduous task of self-representation).  *See* Doc. Nos. 131, 136 & 159.[1]

On January 22, 2016, Defendant was convicted in the Tax Case of multiple counts of money laundering and presenting false claims to the Internal Revenue Service, among other counts.  Near the end of that trial, the court terminated Defendant's self-representation and appointed his stand-by counsel to represent him.  *See* Doc. No. 259, Tr. (Jan. 20, 2016) at 61; Doc. No. 261, Tr. (Jan. 22, 2016) at 12.  And on February 1, 2016, the court also terminated Defendant's self-representation in the Fictitious Instruments Case (which is scheduled for trial beginning on July 26, 2016), and appointed his stand-by counsel to represent him for that case as well.  This appointment of counsel is subject to further discussion after a pending competency examination is completed.  *See* Doc. No. 244.

When terminating Defendant's self-representation in the Tax Case, the court made oral findings on the record, specifically explaining how Defendant's deliberate "serious and obstructionist misconduct," *United States v. Johnson*, 610 F.3d 1138, 1144 (9th Cir. 2010), during court proceedings had

---

[1]  Except where otherwise noted, the docket number references are to the Tax Case, Cr. No. 13-01018 JMS, although many of the relevant proceedings are also reflected in the docket in the Fictitious Instruments Case, Cr. No. 13-01017 JMS.

escalated to where it jeopardized the fairness and just administration of the trial. *See* Doc. No. 261, Tr. (Jan. 22, 2016) at 9, 12. The court made similar findings when terminating self-representation in the Fictitious Instruments case. Doc. No. 244. Now that the trial transcripts from the Tax Case have been finalized, this Order documents and explains the reasons for the termination of Defendant's self-representation. The Order is not intended to set forth *all* relevant instances of Defendant's behavior. Rather, to explain the context for the court's decision, it sets forth ample instances of how Defendant defended himself at trial, and of how his conduct eventually required the court to terminate self-representation.

## II. <u>BACKGROUND</u>

Defendant was indicted in both the Fictitious Instruments and the Tax Cases on November 13, 2013, Doc. No. 1 (Cr. No. 13-01017 JMS-BMK & Cr. No. 13-01018 JMS-BMK),[2] and was released on bail on December 2, 2013. Doc. No. 25. On February 3, 2014, the court appointed attorney Rustam Barbee to represent Defendant in both cases, replacing a federal public defender who withdrew as counsel. Doc. No. 44. During those proceedings, Magistrate Judge Barry Kurren found a breakdown in the attorney-client relationship between Defendant and the

---

[2] The court need not describe the criminal charges alleged in the indictments -- this Order focuses on the termination of Defendant's self-representation, and sets forth only the background necessary to explain the termination and put it into proper context.

public defender, noting that "if there is any further breakdown in the attorney client relationship with the new appointed attorney, the defendant has expressed that he will represent himself."  Doc. No. 42.  And as explained next, Defendant eventually did elect self-representation, and decided to pursue an unconventional defense.

### A.   Defendant Decides to Represent Himself after Examinations for Competency, and Chooses to Present an Unusual Defense

On March 7, 2014, the government filed a motion to revoke Defendant's bail and to have him evaluated for dangerousness, Doc. No. 48, after (among other things) Defendant sent a letter entitled "Affidavit of Clean Hands" directly to the assigned prosecutor, Assistant U.S. Attorney Marshall Silverberg ("AUSA Silverberg").  Doc. No. 48-2.  Among other demands, Defendant asked AUSA Silverberg to "attest and affirm" that "the use of the 'fictitious plaintiff' named in the herein referenced court action is a contempt of court."  *Id*. at 3.  He demanded that AUSA Silverberg "willfully agree to resign immediately and expunge the existing court action," or be "removed from [his] position as an officer of the court and disbarred."  *Id.* at 4.  And he asserted that "all who willfully refuse[] [such requests], agree[] to judgment by confession . . . [of] $5,000,000.00 five million UNTIED [sic] STATES DOLLARS[.]"  *Id.*

4

On March 20, 2014, Magistrate Judge Barry Kurren denied the request to revoke Defendant's bail, but directed that Defendant undergo an initial evaluation for competency and dangerousness.  Doc. Nos. 50, 52.  After a psychological examination was performed by a forensic psychologist in Honolulu, Magistrate Judge Kurren found that Defendant "fully understands the nature of the proceedings against him and is able to assist in his own defense," and "is competent to stand trial."  Doc. No. 54 at 3-4.

On January 26, 2015, at a final pretrial conference in the Tax Case, Barbee filed a motion to withdraw as counsel.  Doc. No. 93, 94.  And at a January 29, 2015 hearing on that motion -- based on Defendant's behavior and remarks made during a sealed portion of the hearing regarding Barbee's request to withdraw -- the court ordered a further competency examination of Defendant be performed by the Bureau of Prisons.  Doc. No. 109, Tr. (Jan. 29, 2015) at 4. Defendant objected.  *See, e.g.*, *id.* at 8 ("I know exactly what's being attempted and what's going to be done and it's -- it's not good, it's fraudulent . . . I don't consent or agree to any of it.  And I'm fine, I am competent."); *id.* at 9 ("I don't consent or agree to . . . another psych evaluation, which was complied with.  And I'm of sound mind.").  The court remanded Defendant into custody for purposes of

conducting an evaluation, with Barbee remaining as Defendant's counsel in the meantime.

On April 22, 2015, the court received a lengthy document from Defendant entitled "Notice of Private American Citizenship Status."  Doc. No. 115.  Enclosed, among others, were documents entitled (1) "Declaration of Status of Dennis Raymond Alexio: American Freeman" and subtitled "Pre-1933 Private Citizen of the United States: American National," Doc. No. 116-6; and (2) "Declaration of Private Business Trust DENNIS RAYMOND ALEXIO Notice of Claims, Conveyance and Private Trust Arrangement."  Doc. No. 116-5.  Although unclear, these documents apparently purported to create a "private trust" holding Defendant's "legal interests by nature in Corporate Sole DENNIS RAYMOND ALEXIO."  *Id.* at 1.  And on May 5, 2015, Defendant mailed the court a document in pleading form entitled "Non-statutory Plea in Abatement in Exclusive Equity," making a "special appearance by its Agent, Dennis Raymond Alexio, a Pre-1933 Private American Citizen."  Doc. No. 120, at 1.  This document apparently sought to dismiss the indictments because of Defendant's "trust status."

Meanwhile, the Bureau of Prisons completed its competency examination of Defendant, and this court held a hearing on May 14, 2015 on Barbee's still-pending motion to withdraw as counsel.  At that hearing, the court noted Defendant's April 22, 2015 and May 5, 2015 documents, but took no

specific action on them.  *See* Doc. Nos. 117, 122.  Based on the results of the full

competency examination, the court found Defendant to be competent.  Defendant

then requested to represent himself, Doc. No. 122, and subsequently filed a written

motion to proceed pro se.  Doc. No. 124.  The court scheduled a *Faretta* hearing to

ascertain whether his waiver of counsel was knowing and intelligent.  Doc. No.

123.  During this time, Defendant was again released on bail.  Doc. No. 128.

At a May 22, 2015 *Faretta* hearing, Defendant confirmed several

times that he wanted to represent himself.  *See* Doc. No. 156, Tr. (May 22, 2015)

at 2 ("I want to move forward myself to protect my interest, yeah."); *id*. at 3

("Yeah, I want to protect my interest in both [cases.]"); *id.* at 22 ("I want[] to go

sui juris . . . in my own right.").  The court gave Defendant an account of the

pending charges and penalties, as well as a full explanation of the disadvantages of

self-representation, which the Defendant acknowledged.  *Id*. at 3-16.  Defendant

agreed to abide by court procedures and courtroom protocol.  *Id.* at 17.  He also

agreed to "do his best" to follow court orders "such that the trial doesn't become

disruptive." *Id*. at 17-18.  He explained that he could not be represented by

Barbee, who refused to file certain documents on behalf of Defendant --

apparently such as those the court received on April 22, 2015 and May 5, 2015.

*See id.* at 26 ("I have things that I need to file and I want to file. . . .  And it's

7

obvious that it can't be done with an attorney. So, he could not file them for me and they were not frivolous."). The court allowed Barbee to withdraw as counsel, but appointed new counsel (Lynn Panagakos), and scheduled a further *Faretta* hearing to give Defendant time to discuss his options with Panagakos. *Id.* at 27; Doc. No. 132.

At a further *Faretta* hearing on June 5, 2015, Defendant again stated he wanted to represent himself, and that he did not want court-appointed counsel to represent him. *See* Doc. No. 154, Tr. (June 5, 2015) at 6, 7, 11. The court found that Defendant understood the charges against him, the maximum possible punishment he faced, and the dangers and disadvantages of self-representation. *Id.* at 12. The court also found Defendant was competent to represent himself, based on the prior competency evaluations and his answers and behavior in court. *Id.* at 12-13. The court granted Defendant's motion for self-representation, and appointed Panagakos as stand-by counsel over Defendant's objection. *Id.* at 14. And Defendant indicated he was intending to "challenge jurisdiction" in the future. *See id.* at 16 ("I have a lot of things that I will have in front of the court, and I will challenge jurisdiction.").

Shortly thereafter, on June 26, 2015, Defendant indeed challenged jurisdiction by filing a document entitled "Amicus Curiae Notice and Demand,"

8

Doc. No. 141, in which he denied being the Defendant, stating that he is "a Pre-1933 Private American National 'Citizen of the United States' protected by Section 1 of the Fourteenth Amendment to the Constitution[.]" *Id.* at 2. Among other things, this document declared that, because of his status, the government "shall withdraw its action and claims against Defendant." *Id.* at 9. Given that Defendant was raising a type of "sovereign citizen" or similar claim or defense, the court denied Defendant's demands in a July 2, 2015 written Order. *See* Doc. No. 145; *United States v. Alexio*, 2015 WL 4069160 (D. Haw. July 2, 2015) ("Order Denying 'Amicus Curaie (Sic) Notice and Demand for the Record'") (explaining how courts across the country have uniformly rejected arguments that are based on "sovereign citizen," or similar theories that attempt to deny jurisdiction based on theories of fictitious identities).

Similarly, on July 8, 2015, Defendant filed a document entitled "Non-statutory Plea in Abatement in Exclusive Equity Want of Jurisdiction in Personam," Doc. No. 146, asserting, among other things, that Defendant "is a Private Business Trust and its Agent/Attorney of Record and Beneficiary is a non-statutory, Pre-1933 Private American National Citizen of the United States and therefore is neither the Defendant, nor quasi-surety/quasi-trustee for the Defendant." *Id*. at 6. Defendant "request[ed] the Court to Abate this case . . . due

9

to a case of misjoinder of parties arising from mistaken identity." *Id*. (emphasis

omitted).  The court denied the request on July 10, 2015.  Doc. No. 147.

On September 17, 2015, the court held a hearing to conduct a

supplemental *Faretta* inquiry specifically to discuss the maximum penalties that

Defendant faced for Counts 11 to 23 in the Tax Case, as well as to address

motions in limine.  Doc. No. 174, Tr. (Sept. 17, 2015) at 3-4, 5-7.  The court

reiterated the disadvantages of self-representation to Defendant, *id.* at 10-14,

Defendant again confirmed that he wanted to represent himself, *id.* at 4, 15, and

the court repeated its findings that Defendant had made a knowing and intelligent

decision to waive his right to counsel and is competent to represent himself.  *Id.* at

16.  Stand-by counsel remained as appointed -- although, on October 20, 2015,

attorney Clifford Hunt was appointed to replace Panagakos as stand-by counsel

due to a calendaring conflict she had with the upcoming January 2016 Tax Case

trial.  Doc. No. 164.

As the Tax Case trial approached, Defendant filed several other

documents, again asserting sovereign citizen or other similar "contract-based"

theories or defenses, seeking to dismiss the indictment.  Specifically, on December

21, 2015, Defendant filed a series of nonsensical documents entitled "Withdrawal

as Surety," Doc. 180, apparently contesting the charges in the Tax Case.  *See, e.g.*,

Doc. No. 180-1 at 5 ("[H]ow and where can any corporate fictional authority claim to have any lawful jurisdiction or claim that I alexio, dennis-raymond the living flesh and blood man, Private American National has any obligation or liability to it under these circumstances[?]").  To the extent these documents sought relief as a motion, the court denied the motion and affirmed that the court has jurisdiction over Defendant.  Doc. No. 185.

Likewise, on January 4, 2016, Defendant filed a "Notice and Demand for Customer Satisfaction Policy," asking AUSA Silverberg to provide Defendant "with the customer satisfaction policy that Mr. Silverberg is relying upon in bringing the charges contained in the Indictment[.]"  Doc. No. 194.  The next day, Defendant filed a "Notice and Demand for the United States to draw down on the customer satisfaction policy to settle collateral assessment," Doc. No. 198, and a "Motion to Dismiss Indictment For Lack of Jurisdiction Because the United States Failed to Produce the Customer Satisfaction Policy."  Doc. No. 200.  The court denied these requests.  Doc. Nos. 201, 203.  And on January 7, 2016, Defendant filed documents directed at the court and the prosecution, apparently arguing that the court and prosecution lacked authority or jurisdiction to bring claims against him.  *See* Doc. Nos. 203, 204; Doc. No. 205 at 3-4 ("You . . . have just been lawfully served with a challenge that requires a written response from you

11

concerning the authority you claim as officers or agents of the government . . . .

Failure to do so will cause an immediate filing of a Writ of Prohibition disallowing

any process of law[.]"). The Motions were denied. Doc. No. 206.[3]

## B. Defendant Represents Himself During Most of the Tax Case Trial

The Tax Case trial began on January 8, 2016. At a hearing before

jury selection started and outside the presence of any potential jurors, Defendant

began with what would become a familiar theme (consistent with his prior court

filings that questioned the court's authority). Specifically, as court was opened,

Defendant immediately asked the court "who are you?" Doc. No. 249, Tr. (Jan. 8,

2016) at 2. He refused to make an appearance, and repeatedly asked the court:

"Will you state your name, please? . . . I don't know who you are. Will you

identify yourself?" *Id*. at 2-3. Defendant then asked the court "do you have a

claim against me?" *Id.* at 3. The following colloquy (shortened for bevity)

occurred:

> The Court:   The United States has an indictment that has been
>              returned against you. I have no claim against you.
> Defendant:   Okay. Do you know anyone else that has a claim against
>              me?

---

[3] Given those filings by Defendant, the government on January 7, 2016 filed a Motion to revoke Defendant's bail, stating in part that "[t]he government is greatly concerned that the defendant's hostility to the Court and the government will manifest itself during the trial and endanger everyone in the courtroom." Doc. No. 207. The Motion to revoke bail was denied. Doc. No. 210.

| | |
|---|---|
| The Court: | The United States does. |
| Defendant: | Are they here? |
| The Court: | Yes.  Mr. Silverberg represents the United States. |
| Defendant: | Where are they? . . .  Do you [AUSA Silverberg] have a claim against me? . . .  You don't have a claim against me. . . .  If no one has a claim then I have no business here. . . .  I object to these proceedings.  I need someone to state a claim. |

*Id.* at 3-4.  The court several times asked Defendant to sit down, but Defendant refused, and persisted in objecting "to everything."  *Id.* at 4-5.

The court then explained to Defendant that his right to self-representation does not overcome a court's right to preserve courtroom order, and warned Defendant that his self-representation could be terminated if he "deliberately engages in serious and obstructionist misconduct."  *Id*. at 6 (quoting *Johnson*, 610 F.3d at 1144).  The court also reminded Defendant that he agreed during the *Faretta* proceedings that he was "capable" of following court orders to prevent disruption of the trial.  *Id.* at 7.  When asked if he would participate at trial, Defendant answered: "I will be here in good faith, not disruptive.  And I just need to know who has a claim against me."  *Id*. at 8.  He told the court "I'm protecting my interest, and I'm just asking questions."  *Id*. at 10.  After further

warning that disruption of the trial would result in termination of Defendant's self-representation, the trial proceeded to the jury selection phase.[4]

As jury selection began, in front of a pool of prospective jurors, the following exchange occurred:

The Court: . . . Mr. Alexio?  Make your appearance in front of the jury please.

Defendant: Who are you?

. . . .

The Court: All right.  My name is Michael Seabright.  I'm a United States District Court Judge presiding over this trial.  Can you make your appearance in front of the jury?

Defendant: Do you have a claim against me?

The Court: All right.  Do you intend to make an appearance in front of the jury, Mr. Alexio?

Defendant: No, I asked you a question.  Do you have a claim against me?

The Court: . . . The federal government does, an indictment against you in this case that's proceeding to trial today.

Defendant: Who is that?

The Court: So I'm asking you to state your name for the record.

Defendant: I am asking who is that, the United States federal government?

---

[4]  The court also explained for the record -- based on its observations and consistent with the competency evaluations -- that Defendant was fully competent and his behavior was "goal-directed."  Doc. No. 249, Tr. (Jan. 8, 2016) at 10.  The court told Defendant "I believe you understand exactly what you're saying [and] that this is a game on your part. . . .  It's a tactic.  It's a game." *Id.* at 11-12.  This Order, however, does not otherwise address Defendant's competency further -- it focuses on the reasons for terminating Defendant's self representation.  To be clear, however, the court found that Defendant was competent both to assist in his own defense, and to represent himself.  *See Edwards*, 554 U.S. at 177-78.

Nevertheless, after the Tax Case trial, his appointed counsel filed a motion seeking to have Defendant examined for competency for a third time based on subsequent events.  *See* Doc. No. 200 (Cr. No. 13-01017 JMS), at 2.  On February 1, 2016, the court granted that request for an additional examination, which is pending.  *See* Doc. Nos. 201, 210 (Cr. No. 13-10107 JMS).

> The Court:   Yes, the United States Attorney's Office for the District of Hawaii represented by Mr. Silverberg, who introduced himself to the jury just a moment ago.
> Defendant:   Him?
> The Court:   Yes.
> Defendant:   You're the -- can you identify yourself to me?
> The Court:   He just did.  His name is Marshall Silverberg.
> . . . .
> Defendant:   Do you have a claim against me?
> The Court:   All right. Can we have sidebar, please

Doc. No. 255, Tr. (Jan. 8, 2016, V. II) at 3-4.  During sidebar, the court asked

Defendant if he intended to proceed in this fashion during the trial.  Defendant

responded:

> I need some answers here because I know you're getting me to contract with you under duress and everything else.  My word is my bond. . . .  I'm not here to cause strife or anything.  I want settlement -- satisfaction and settlement on this. . . .  I'm not being disruptive.  I want to know exactly who -- what the masquerade is, okay, because I understand how it's functioning.  Okay.  I'm Dennis. . . .  Well, I'm a private American national, and you have all the paperwork. . . .  I have God-given inalienable rights and -- and I reserve those.

*Id.* at 5-6 (some colloquy omitted).  The court again told Defendant that the court

could appoint his stand-by counsel Hunt to represent him if he would not

participate in the trial:

> The Court:   . . . .  I'm going to ask you to participate in this process. If you don't, I will consider it disruptive . . . and over your objection I will appoint counsel who will try this

15

> case instead of you.  So you have a decision to make:  To
> continue on this course or I'm going to appoint counsel
> over your objection.

*Id.* at 7.  After a recess to allow Defendant to consult with Hunt, Defendant

persisted in refusing to introduce himself to the jury pool:

| | |
|---|---|
| The Court: | . . . You wish to make an appearance, Mr. Alexio? . . . Do you want to introduce yourself to the jury? |
| Defendant: | Who are you? |
| The Court: | All right.  Do you want to introduce yourself to the jury? |
| Defendant: | No, I don't want to introduce myself. . . .  Who are you? |
| . . . . | |
| The Court: | I'm the judge in the case, Mr. Alexio. |
| Defendant: | Do you have a claim against me? |

*Id.* at 13.  During a subsequent sidebar, the following colloquy occurred:

| | |
|---|---|
| The Court: | . . . Mr. Alexio, if we went forward with the jury selection . . . it's necessary to find out if we can have a fair trial and impartial jurors to decide your case.  And I need you to tell them who you are.  Are you willing to do that? |
| Defendant: | Tell them who I am? |
| The Court: | Yeah, yeah.  And that's why I'm going to ask you to sort of make your appearances about you saying who you are so the jury knows who you are because you're representing yourself. |
| Defendant: | I'm sui juris, yeah, but you guys are slamming the pro se on me and stuff like that, but -- you need my agreement that I can identify myself to them? |
| The Court: | You need to be non-disruptive, and that includes introducing yourself to the jury when I require you to do that. |
| Defendant: | Well, if you require me to do it, then I'll, you know, introduce myself as who I am. |

16

| | |
|---|---|
| The Court: | And who's that, what will you say? |
| Defendant: | I'm the man. |
| The Court: | What about your name? |
| Defendant: | A living soul and lawful man on the land.  That's who I am. |
| The Court: | All right.  So you're not Dennis Alexio. |
| Defendant: | The entity? The name, the title? These are all titles here, yeah.  I'm here on behalf of the title. |

*Id.* at 15-16.  After that exchange, jury selection began.  After the government told

the prospective jurors who it expected to call as witnesses, the court asked

Defendant to do the same, and Defendant introduced himself:

| | |
|---|---|
| The Court: | . . . Mr. Alexio, if you could introduce yourself and any potential witnesses, not necessarily ones that will be called, but potential witnesses. |
| Defendant: | My name is Dennis, and any of the witnesses that he calls are my witnesses, and whoever they call, those are my witnesses.  That's who I'll call.  Thank you. |

Doc. No. 254, Tr. (Jan. 8, 2016, V. I) at 11-12.  Defendant then participated in jury

selection, occasionally asking appropriate questions of potential jurors.  *See, e.g.*,

*id.* at 96 ("Are you partial to the lawyers' correctness?"); *id*. ("Can you apply the

presumption of innocence -- in this case?").  A jury was then selected.

At the beginning of the second day of trial (outside the presence of

the jury), Defendant again asked the court several times "who are you?" and "do

you have a claim against me?"  Doc. No. 256, Tr. (Jan. 11, 2016) at 5-6.  The court

again told Defendant that "[t]he United States government has a claim through the

indictment." *Id.* at 5.  Not satisfied, the following exchange with Defendant

occurred:

> Defendant:  No one has a claim against me here.  This case is dismissed with prejudice right now.  This case is dismissed.
> The Court:  Are you leaving?
> Defendant:  No, actually I'm grabbing my pen.
> The Court:  Okay.  All right.
> Defendant:  Why was that?
> The Court:  It looked to me [like] you were leaving.  I was just asking you if you're leaving.  If you're grabbing your pen, that's fine.

*Id.* at 8.  Defendant again challenged the court's jurisdiction and authority:

> Defendant:  I want to challenge the jurisdiction right now.
> The Court:  And that's denied.  It's been denied many times.
> Defendant:  Well, I'm not a U.S. citizen.  I'm not a resident of the District of Columbia or any federal enclave or a territory, and I don't consent.  And I'm not a federal citizen.
> The Court:  Denied.
> Defendant:  What authority do you have to deny that if you won't identify yourself?  Huh?

*Id.* at 9.

As the trial progressed, Defendant cross-examined each government

witness, only asking variations of the same four short questions: "who are you?,"

"do you promise to tell the truth?," "do you have a claim against me?," and "do

you know anyone here that has a claim against me?"  *See, e.g.*, *id.* at 31-32, 105,

164-65, 188, 194; Doc. No. 257, Tr. (Jan. 12, 2016) at 19-20, 33, 46-47, 63, 69,

101-102.  And throughout the trial, Defendant occasionally continued to ask the

court -- outside the presence of the jury -- who it was, and whether it had a claim

against him.[5]

///

///

----

[5]  At an early point in the trial, after the government proffered an exhibit in front of the jury, the court asked Defendant whether he had an objection.  After Defendant answered "who are you?," the court excused the jury, and then directly ordered Defendant not to ask the court who it was in front of the jury.  Doc. No. 257, Tr. (Jan. 12, 2016) at 41:

| | |
|---|---|
| The Court: | Mr. Alexio, I'm ordering you not to ask me that question again.  It's a direct order . . . if you ask me again, you're likely going to be held in Contempt of Court.  And imprisoned.  You ask me without the jury present, I don't care that much.  The jury present, though, you're hurting yourself.  So I'm telling you -- |
| Defendant: | The jury is not present, am I correct? |
| The Court: | No, you are correct, that's right. Absolutely you're correct. |
| Defendant: | Who are you? |
| The Court: | When the jury comes back, if you ask that question again, I'm going to hold you in contempt.  I'm telling you right now. |
| Defendant: | Do you have a claim against me? |

*Id.*  At a later sidebar that day, Defendant confirmed for himself that the prohibition was directed at comments in front of the jury:

| | |
|---|---|
| Defendant: | And earlier you stated that you did not want me to ask you who you were in front of the jury, correct? |
| The Court: | I -- I warned you that you may be held in contempt if you do that. |
| Defendant: | I may be held in contempt if I ask in front of the jury. |
| The Court: | Yes. |
| Defendant: | Okay.  I just want to be certain that that's exactly what you said. |
| The Court: | I think it's pretty clear that's what I said. |
| Defendant: | Well, I want to be super clear. . . .  I want to make sure it was in front of the jury. |

*Id.* at 116-17.

19

## C.     The Court Terminates Defendant's Self-representation

At many points during the Tax Case trial, Defendant's questions and responses were mere annoyances -- in context, they appeared to be Defendant's sarcastic method of answering "no" or "I don't know" when the court asked Defendant a question.  For example, when the court asked Defendant about a government witness' testimony during sidebar, the following occurred:

> The Court:   Okay.  So that does leave you in a position of having to deal with that [testimony], Mr. Alexio.
> Defendant:   Who are you?
> The Court:   Mr. Alexio, this is a serious matter now.
> Defendant:   Oh, I'm -- I understand that.  Who are you?
> . . . .
> The Court:   Mr. Alexio, do you want to proceed with this or do you want me to have Mr. Hunt question [the witness]?
> Defendant:   I'll question her.
> The Court:   Okay.
> Defendant:   But I want -- I want an answer.
> The Court:   I'm not answering that.
> Defendant:   Who are you?

Doc. No. 258, Tr. (Jan. 19, 2016) at 231-32.  Similarly, at the end of a trial day when discussing plans for the next day, the following occurred after the jury had been excused:

> The Court:   . . . Mr. Alexio, if the government rests [at] 10:30, 11:30, whenever it may be, that is when you will make the decision as to whether or not you want to call any witnesses and/or testify yourself.  All right?  Anything further, Mr. Alexio, from you?

Defendant:  Who are you?
The Court:  All right.  Court is in recess.

*Id.* at 260.  And the next day, after the jury was excused, the following occurred:

The Court:  All right.  Please be seated. . . .  The jury has departed.
            All right.  Mr. Alexio, so what is your plan here as far as
            your case?
Defendant:  Who are you?
The Court:  Mr. Alexio, it's time now or never to tell me if you're
            going to call witnesses or if you intend to testify
            yourself.
Defendant:  Please identify yourself.
The Court:  I'm not going to do that.  I'm asking you a question.
Defendant:  Do you have a claim against me?

Doc. No. 259, Tr. (Jan. 20, 2016), at 41.[6]

But eventually Defendant's behavior crossed a line from (1) an

apparent defense strategy probably based on sovereign citizen or similar beliefs, to

(2) deliberately obstructive behavior that interfered with the conduct of a fair trial.

In particular, during the settling of jury instructions, when asked if Defendant had

any objections to the court's proposed instructions, Defendant answered "who are

you?" (after claiming several times that "there's no indictment").  *Id.* at 67-69.

---

[6]  As noted above, Defendant was warned about potential contempt citations for failure to
follow court orders.  Although Defendant was not held in contempt, the court did eventually
revoke Defendant's bail because -- after the government presented its case -- Defendant, among
other behavior, belligerently disregarded court orders (including repeating "who are you?" to the
court in front of the jury), took an aggressive and hostile stance after he proclaimed the case
"dismissed," and then started to leave the courtroom.  Doc. No. 259, Tr. (Jan. 20, 2016) at 50-55,
59-60.  Again, however, this Order focuses on explaining the termination of Defendant's self-
representation, and does not fully explain the reasons for bail revocation.

The court then appointed stand-by counsel Hunt to represent Defendant's interests

in evaluating the adequacy of the proposed instructions.  *Id*. at 69, 70.[7]  Defendant

---

[7]  The court specifically reminded Defendant about the importance of reviewing the court's proposed jury instructions, and eventually terminated self-representation for this task to allow Hunt to provide input, and to proceed without Defendant's interference:

| | |
|---|---|
| The Court: | . . . So what I'm going to do is simply start by reading the beginning part of the [proposed] instruction, and then ask if you have any objection to it or not. . . . |
| Defendant: | I object to all of it.  The entire -- the entire thing. |
| The Court: | . . . I understand you object to everything.  You've objected to everything throughout the whole process.  But this is the time when you have to be specific if you want to preserve an objection for the Ninth Circuit as to what is specifically wrong with the jury instruction. . . .  [T]his is a very legal issue here, these jury instructions, and you have to be able to make legal arguments as to what's wrong with a particular instruction in a legal sense.  Okay? |
| | Mr. Hunt was given an opportunity by me to prepare some jury instructions and objections, and he could only file those if you consented.  He didn't file them.  I take that as there's a lack of consent.  So you're acting as your own lawyer here. |
| Defendant: | I'm not acting as my own lawyer.  Nope. |
| . . . . | |
| The Court: | "It is your duty to determine the facts and in doing so, you must consider only the evidence I have admitted in the case." |
| Silverberg: | No objection. |
| The Court: | Mr. Alexio?  We're on page 6.  Do you have an objection to Page 6? |
| Defendant: | Wait.  (Perusing document.) |
| The Court: | Are you going to answer or you're not going to answer me?  Do you have an objection to instruction -- |
| Defendant: | I have an objection to all of this, all the jury instructions right now. . . . Because there's no indictment. . . .  There's no claim. . . . Absolutely. |
| The Court: | You made that objection, all right? |
| Defendant: | I object.  There's no claim. |
| . . . . | |
| The Court: | Follow along.  Page 7. . . .  Mr. Alexio. . .  Same objection? |
| Defendant: | Who are you? |

(continued...)

continued to object, however, and repeated his desire to represent himself.  *Id*. at 69, 71.

Defendant was allowed to represent himself after settling of instructions, and then presented his own closing argument.[8]  But during the reading of the verdict on January 22, 2016, the court terminated his self-representation (and appointed Hunt) for all remaining matters in the Tax Case -- including for forfeiture proceedings that followed the guilty verdict, and for

---

[7](...continued)

| The Court: | All right.  Here's what I'm going to do.  Mr. Hunt, I want you to take over these jury instructions.  I'm not going to have him do this.  I just want to hear from you if you have anything that you might add.  I'm doing this over [Defendant's] objection. |
| Defendant: | You asked me a question.  I want to know who you are. . . .  Cliff Hunt has nothing to do with -- with my -- my interest. |
| The Court: | I understand that . . . I'm just trying to get as much help as I can to make sure we have appropriate jury instructions that protect your rights.  You obviously aren't trying to do that in this regard. |
| Defendant: | I have my God-given inalienable rights. |
| The Court: | All right. . . .  [W]e're going to start from the beginning, Mr. Hunt. |
| Defendant: | I object. |
| The Court: | I understand. |
| Hunt: | No objection. |
| Defendant: | And Mr. Hunt is not here for my best interest, so -- |
| The Court: | Okay.  So here's the deal. |
| Defendant: | -- anything contrary to that -- |
| The Court: | I want you to stop talking now.  I've appointed him to represent you during this discussion.  You've made your objection. . . .  But I can't proceed with you talking constantly. |

Doc. No. 259, Tr. (Jan. 20, 2016) at 65-70 (some colloquy omitted).

[8]  Defendant's closing consisted of the following:  "The United States cannot come to equity with clean hands.  And the United States has not proven equity.  There is no claim against me.  Thank you."  Doc. No. 260, Tr. (Jan. 21, 2016) at 100.

23

sentencing matters.  The following transcript excerpts demonstrate the obstructive

nature of Defendant's behavior during the reading of the verdict:

| | |
|---|---|
| The Court: | All right.  We are on the record with Mr. Silverberg, Mr. Alexio -- |
| Defendant: | Who are you? |
| The Court: | -- and ladies and gentlemen of the jury. |
| Defendant: | Who are you? |
| The Court: | I understand you have reached a unanimous verdict; is that right? |
| The Foreperson: | Right. . . .  Yes. |
| Defendant: | Who are you? |
| The Court: | Do you have the verdict form? |
| The Foreperson: | Yes. |
| The Court: | If you would pass that forward, please. |
| Defendant: | Who are you? Who are you? |
| The Court: | Thank you. |
| Defendant: | Who are you? Who are you? Who are you? Are you James Michael Seabright? |
| The Court: | All right.  So I have reviewed the verdict form.  It is -- it does appear to be in order and I -- |
| Defendant: | Do you have a claim against me? |
| The Court: | -- will publish the verdict form at this time.  I'm going to go just count by count.  I'm not going to read the entire verdict form.  I'm going to go count by count. |
| Defendant: | Objection.  There's no claim here. |
| The Court: | Count 1, guilty.  Count 2, guilty. |
| Defendant: | Who are you? |
| The Court: | Count 4, guilty.  Count 11 -- |
| Defendant: | Who are you? |
| The Court: | -- guilty.  Count 12, guilty. |
| Defendant: | Objection. Who are you? |

The Court:  All right, Mr. Alexio, I'm ordering you now to be quiet or I'm going to have you removed from the courtroom, one of the two.

Defendant:  Who are you?

The Court:  One of the two, be quiet or you will be removed from the courtroom.

Defendant:  This Court does not have jurisdiction. I'm challenging jurisdiction, and you have not identified yourself.

The Court:  Count 13, money laundering -- Count 14, money laundering --

Defendant:  Objection.

The Court:  Sorry, Count 13, guilty.

Defendant:  Who are you?

The Court:  All right. Marshals, remove him from the courtroom.

Defendant:  Who are you? You have no claim. You have no claim. No claim. There is no claim and you know it. Remind you of your conscience.

(Defendant removed from the courtroom.)

The Court:  All right. Count 13 -- Mr. Hunt, I am having you step in at this point in time to represent Mr. Alexio's interest in his absence.

Doc. No. 261, Tr. (Jan. 22, 2016) at 3-5.

After the court finished reading the verdict, the court made the following findings on the record, outside the presence of the jury:

All right. So I do want to say for the record that I did order Mr. Alexio out of the courtroom. I think I have been extremely patient throughout the course of this trial, at least that's my view.

He understands well that he couldn't do what he was doing here, and I gave him a fair warning and he simply would not comply with my order. So, I had him removed from the courtroom because at this point he became so disorderly, the verdict could not be returned in an appropriate manner.

25

> And so I am, because of that and pursuant to the law that we've discussed at length . . . I am going to appoint Mr. Hunt to act as counsel for Mr. Alexio, and the self-representation is hereby terminated in this case.

*Id.* at 12.

Further, after the jury verdict was read but before forfeiture proceedings began (and outside the jury's presence), Defendant again had to be removed from the courtroom -- although he was able to view and hear subsequent proceedings remotely by video cameras. The following transcript excerpts explain this incident:

> The Court:  All right. So we're going to bring the -- the jury up. If Mr. Alexio is disruptive, I will have him removed and he'll be taken to the conference room where he can view . . . view us, we can't view him. . . .
>
> Defendant:  Objection.
>
> . . . .
>
> The Court:  All right. So let's bring the jury in.
>
> Defendant:  I'm challenging jurisdiction here. Who are you?
> Who are you?
> Who are you?
> Who are you?
> Who are you?
> Who are you?
> Who are you?
> Who are you?
> Who are you?
> Who are you?
>
> (Defendant and Mr. Hunt conferring.)
> Do you have a claim against me?
> Are you James Michael Seabright?

> Do you have a claim against me?
> Is there anyone here who has a claim against me?
> Who are you?
> Who are you?
> Do you have a claim against me?
> Is there anyone here who has a claim against me?  Let the record reflect there is no one here with a claim against me.  This case is closed.

U.S. Deputy Marshal:  Stay right there.  Sit down.

Defendant:  Just what I thought.  Do you have a claim against me?  Who are you?

U.S. Deputy Marshal:  I'm Pete Townsend.

Defendant:  Do you have a claim against me?  Do you have a claim against me, Pete?  Is there anyone here in this courtroom who has a claim against me?  This case is dismissed.

U.S. Deputy Marshal:  Sit down.  Stay right there.

Defendant:  Look at this.  This is fun.  Do you have a claim against me?

Marshall Silverberg, do you have a claim against me?  Do you have a claim against me?

Silverberg:  Your Honor, I have to say I'm quickly changing my opinion given this conduct of waiting for the jury to come in.

Defendant:  Answer.

The Court:  And he twice stood up in an attempt to leave and the marshals have had to put their hands on him and force him back down into his chair.  I am --

Defendant:  For the record --

The Court:  Make sure the jury doesn't come in right now, if somebody can.

Defendant:  Yeah, we don't want them to know what's going on.  I'm challenging jurisdiction of this Court right now.

The Court:  And I'm ordering Mr. Alexio removed from the courtroom.

Defendant:  I am challenging jurisdiction.  This Court does not have jurisdiction.

(Defendant removed from the courtroom.)

27

| The Court: | All right.  So Mr. Alexio has been removed.  I think the reasons are obvious, but he was extremely disruptive.  And as I said, when he said the case was dismissed twice, he got out of his chair and started to turn around, and the marshals had to place him back down. |
| | . . . . |
| The Court: | Mr. Hunt, I am appointing you for sentencing as well. |

*Id.* at 26-29.

On January 25, 2016, the government filed a written motion to terminate Defendant's self representation in the Fictitious Instruments case.  Doc. No. 193 (Cr. No. 13-01017 JMS).  And on February 1, 2016, the court terminated Defendant's self-representation in the Fictitious Instruments case, and appointed Hunt to represent him (subject to revisiting Defendant's choice after completion of the pending additional competency examination).  Doc. No. 244.  The court based this determination primarily on Defendant's disruptions and obstructive behavior in the Tax Case (both before and after Hunt was appointed to take over Defendant's representation).

## III.  <u>DISCUSSION</u>

### A.    **Legal Standards**

"The right to represent oneself, like the right to counsel, is secured by the Constitution."  *United States v. Neal*, 776 F.3d 645, 658 (9th Cir. 2015) (citing *Faretta*, 422 U.S. at 814-15).  "Forcing a lawyer upon an unwilling defendant is

contrary to his basic right to defend himself if he truly wants to do so." *Faretta*,

422 U.S. at 817.  If a defendant, after being "advised of his right to counsel and

the dangers and disadvantages of self representation[,] . . . persists in his choice to

represent himself, that choice must be honored even if it is to his own detriment."

*Johnson*, 610 F.3d at 1144 (citing *Faretta*, 422 U.S. at 834).  "In the absence of

any mental illness or uncontrollable behavior, [defendants have] the right to

present . . . unorthodox defenses and argue their theories to the bitter end." *Id.* at

1147.  And, in representing themselves, defendants may act "occasionally

wacky," "eccentric," or "foolish." *Johnson*, 610 F.3d at 1144, 1145; *see also, e.g.*,

*United States v. Flewitt*, 874 F.2d 669, 673 (9th Cir. 1989) ("[T]he defendants'

constitutional right of self-representation may not be abrogated because they were

uncooperative with the Government . . . or [made] vague and poorly formulated

motions . . . .  [I]f they chose to represent themselves and . . . choose tactics that

left them poorly prepared to defend, that was their choice to make.").

But this "does not mean that the defendant's right to self-

representation overcomes the court's right to maintain order in the courtroom and

conduct proceedings in a manner consonant with our trial traditions." *United*

*States v. Mack*, 362 F.3d 597, 601 (9th Cir. 2004) (citing *McKaskle v. Wiggins*,

465 U.S. 168, 173 (1984)).  "The right to self-representation is not a license to

abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 834 n.46.  Specifically,

"an accused has a Sixth Amendment right to conduct his own defense, provided

only that he knowingly and intelligently forgoes his right to counsel and that he is

able and willing to abide by rules of procedure and courtroom protocol."

*McKaskle*, 465 U.S. at 173.

That is, "the right to self-representation is not absolute; the

constitutional guarantee to a fair trial permits 'the trial judge [to] terminate

self-representation by a defendant who deliberately engages in serious and

obstructionist misconduct.'"  *Johnson*, 610 F.3d at 1144 (quoting *Faretta*, 422

U.S. at 834 n.46).  A district court should not "permit an obstreperous defendant to

represent himself under *Faretta* when there is a risk the trial will violate due

process[.]"  *Id.*

**B.     Application of Standards -- Defendant Deliberately and Seriously
         Obstructed Court Proceedings**

Applying *Johnson*, the court has little difficulty concluding that

Defendant "deliberately engage[d] in serious and obstructionist misconduct," *id.*,

which necessitated termination of Defendant's self-representation in the Tax Case.

The record demonstrates that during the settling of jury instructions, Defendant's

"who are you?" comments prevented the court from completing this key task, thus

requiring stand-by counsel (who subsequently provided useful input to the process) to be appointed to represent Defendant for that reason. And, as the court found on the record in open court, Defendant's constant interruption during the reading of the verdict prevented the verdict from being returned in an appropriate manner. Although the court had warned Defendant about removal, he deliberately escalated his tactics to interfere with trial proceedings.

During the trial, the court had to balance possible termination of self-representation with Defendant's concomitant constitutional right to present his defense as he saw fit (whether or not his defense had any validity). *See, e.g.*, *Johnson*, 610 F.3d at 1144 ("[His] choice must be honored even if it is to his own detriment."); *id.* at 1147 (reiterating that defendants have a right to present "unorthodox defenses and argue their theories to the bitter end"). Drawing this line is difficult. *See, e.g.*, *Davis v. Grant*, 532 F.3d 132, 143 (2d Cir. 2008) ("[A] trial-court judge confronted with a defendant who both continues to engage in serious misconduct and insists upon his right to represent himself is placed on the horns of a serious dilemma. The judge must choose between two imperfect solutions -- whether to allow the defendant to remain in the courtroom despite persistent misbehavior or to revoke the defendant's right to represent himself.").

Here, through most of the trial, Defendant's verbiage ("who are you," "do you have a claim against me?") was apparently part and parcel of his own strategy of challenging the court's jurisdiction, consistent with his filings declaring that he is a "pre-1933 Private American National" and/or that his identity has been transferred to a private trust. His language was also a method of not answering questions or communicating disdain to the court or to the situation he was facing. And he has a right -- to a certain point -- to defend himself in such a manner. It is now settled, for example, that defendants may present "an absurd legal theory wrapped up in Uniform Commercial Code gibberish," *Johnson*, 610 F.3d at 1140, and "[u]nder both *Faretta* and *Edwards*, they ha[ve] the right to represent themselves and go down in flames if they wish[.]" *Id.*

But Defendant crossed the line when he violated direct court orders, and interfered with and obstructed important court proceedings, both during the settling of jury instructions and in front of the jury as the court was taking the verdict. *See, e.g.*, *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 162 (2000) ("[T]he government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."). At that point, the court no longer had a choice -- termination of self-representation, with appointment of Hunt to take over representation, was necessary as a matter of just

administration of the trial and, indeed, to assure due process to Defendant.  *See Johnson*, 610 F.3d at 1144 (indicating that a district court should not "permit an obstreperous defendant to represent himself under *Faretta* when there is a risk the trial will violate due process[.]").

Further, Defendant's behavior while he represented himself, as well as at the end of the trial *after* self-representation was terminated, also indicated that Defendant should not be allowed to represent himself in the Fictitious Instruments Case.  If Defendant still wants to represent himself in that case, that decision can be revisited after the pending third competency examination is completed.  In the meantime, Hunt remains as appointed counsel for both cases.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the court has terminated Defendant's self-representation for further proceedings in the Tax Case (*United States v. Alexio*, Cr. No. 13-01018 JMS), and for the pending trial in the Fictitious Instruments Case

///

///

///

///

///

(*United States v. Alexio*, Cr. No. 13-01017 JMS), subject to further discussion after future developments.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 18, 2016.



    /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Alexio*, Cr. Nos. 13-01017 JMS-BMK & 13-01018 JMS-BMK, Order Explaining Court's Termination of Defendant's Self-Representation

34